No. 32.—WILLIAM TAYLOR, plaintiff in error, *vs*. WILLIAM TUCKER, defendant in error.

Books of accounts, about to be tendered in evidence, must be first proved to be the original books of entry, by the oath of the party introducing them, and then be submitted to the inspection of the court; and, if found free from all fraudulent appearances or circumstances—such as material and gross alterations, false additions, &c., and contain the first entries or charges, by the party, made at or near the time of the transaction to be proved—they are competent  If the contrary is discoverable from the books themselves, or comes out upon the examination of the party, they ought to be rejected.  The credibility, both of the books and of the party, is to be weighed by the jury, and depends upon various circumstances, of which they are the judges.

Separate sheets of paper, containing the original entries of an account for lumber, though such sheets are attached to the declaration as the bill of particulars, are admissible in evidence, upon the footing of original books of accounts, and under the same rules and restrictions as are prescribed by the courts in the case of merchants' or shopkeepers' books.

It is not material whether the original entries of an account be made in a book or upon a separate sheet of paper; it is only material that it be an account of the dealing between the parties, and be primary and original.

When the plaintiff's only evidence is his original books or entries of his account, it becomes indispensable to prove *aliunde* by one or more persons who had dealt with him, that he was in the habit of keeping correct accounts.

This was an action brought by the defendant in error against the plaintiff in error, predicated upon an open account for lumber, and was tried before Judge Warren, in the Superior Court of the county of Randolph, at April Term, 1846.

For the facts and circumstances of the case, and the matters of error alleged, see the decision of the Supreme Court.

WM. TAYLOR, for plaintiff in error,

Contended that the plaintiff below could not support his books of original entries by his own oath alone; and in support of this position, cited *Boyd* vs. *Ladsden*, 4 *McCord*, 76 ; *Slade* vs. *Teesdale*, 2 *Bay*. 172; 2 *Bay*. 162 ; 3 *Phil. on Ev.* 686. The common law did authorize merchants' and tradesmen's books to be made evidence, under certain restrictions. But the common law was changed by the statute of 7 *James* 1, ch. 12, which required such suits to be brought within a year.—3 *Black. Com.* chap. 23, *top page*, 291 ; 1 *Phil. Ev.* 266.

2d. To be made evidence, the tradesman should show by his own oath, that the books tendered are his books of original entries ; that they contain regularly the deal-

ings between the parties ; that he had no clerk ; that the articles charged were delivered ; and that he keeps fair and honest books, by those who have traded with him. —*Vosburgh* vs. *Thayer*, 12 *Johns. Rep.* 461 ; *Linnell* vs. *Sutherland*, 11 *Wendell*, 568 ; 4 *John*. 483 ; 5 *ib*. 306.

3d. Where goods are sold and delivered by a clerk, the clerk himself must be introduced.—*1 Phil. Ev.* 263–4.

The books must show items sold and delivered by the tradesman, and those sold and delivered by the clerk, and the distinction must be made by evidence.— *Kaughley* vs. *Brower*, 16 *Sergt. & Rawle*, 133–4 ; *Wright* vs. *Sharp*, 1 *Brown*, 344 ; *Smith* vs. *Lane*, 12 *Sergt. & Rawle*, 80.

Goods delivered to a third person, even the servant of the purchaser, cannot be proved by the books.—*Kerr* vs. *Love*, 1 *Wash. R.* 172 ; *Deas* vs. *Darby*, 1 *Nott & McC*. 436.   When goods are sold upon a written order, the order itself must be produced.—*Smith* vs. *Lane*, 12 *Sergt. & Rawle*, 80.

Books, to be evidence, must show that the entries were made at the time of delivery of the goods; otherwise the books must be rejected.—1 *Rawle's R.* 441 ; 3 *Phil. Ev.* 696.

It must appear that the party keeps regular books, and not upon scraps of paper.—*Lynch* vs. *Hugo*, 1 *Bay*. 23 ; *Pierce* vs. *Smith*, 4 *Mass. R.* 455.

DAVID KIDDOO, for the defendant in error.

For the general law relative to the admissibility of *shop-books* in evidence, cited *Greenleaf on Evidence*, vol. 1, pp. 142–148, and *notes*.

Goods delivered by servant during the day, and the entries made by the master at night, or on the following morning, from memorandums made by the servant : the entries considered original entries, and admissible in evidence.—1 *Greenleaf Ev*. 142, in *notes* ; *Ingraham* vs. *Bockious*, 9 *S. & R.* 285.

Irregular memorandum books received as books of original entries.—*Cogswell* vs *Dolliver*, 2 *Mass. R.* 217.

Entries transcribed from slate into book, considered original entries.—13 *Mass. R.* 427 ; *Faxon* vs. *Hollis*.   It is no objection to book that it is kept in ledger form.—*Ib*.   For the distinction between competency and credibility of book.—2 *Mass. R.* 217.   The oath of the party is competent and admissible, to prove that his books are books of original entry.

*By the Court*—NISBET, Judge.

This was an action of assumpsit, brought by the defendant in error against the plaintiff, to recover a bill of lumber.   A bill of particulars was appended to plaintiff's writ, which was admitted in evidence as his original entries, being first proven to be such by the oath of plaintiff, and proof being had also that the plaintiff was in the habit of keeping correct accounts.   The lumber was delivered, it seems, in part by a person who swore that he kept memoranda of his sales, and reported them to the plaintiff ; the plaintiff swearing that a part of the entries made in his account were made from the memoranda of his sawyer, as he reported to him ; the sawyer further proving that he did not act as clerk for the plaintiff, but only as his employee, to saw and deliver lumber.

The points of error taken, grew out of the admission of the plaintiff to prove his own account, and the admission of the account itself as a book of original entries ; and also out of the charge of the court in relation to the account.

The first error assigned is, that the plaintiff in the court below was permetitd to prove, by his own oath, that the account sued upon was his

original entries, and that he had no other book of original entries. In disposing of this assignment, it is proper to premise, that the record discloses that plaintiff kept no clerk, and that the account proven, was the identical paper upon which the plaintiff made his original entries ; and that he made no other entries but these. The account contained various items of lumber, of different kinds, entered at different times, with the price of each item footed, and 25 per cent. upon the whole sum added—which addition of 25 per cent. made what is called, in the argument, the credit price of the lumber.

In many States of our Union, the admission of the parties' own books and his own entries, has been authorized and regulated by statute, as in Vermont, Connecticut, Maryland, Virginia, North and South Carolina, and some others. In almost all the rest, as in our own State, they have been admitted without statute authority, under the common law. This rule of evidence has been usually held a departure from the common law. I see not why it should be so held. Mr. Greenleaf says, in speaking of this kind of evidence : " In general, its admission will be found in harmony with the rules of the common law, the entry being admitted only when it was evidently contemporaneous with the fact, and part of the *res gestæ.*"—*Greenleaf's Ev.* sec. 118.

The testimony is admitted *ex necessitate rei*, and being the act of the party, should be received with great caution. The caution with which it has been admitted, is manifest in those limitations and restrictions which the courts have thrown around the rule. It is so carefully guarded that it can do no harm, and is fruitful of good, particularly to that class of small dealers whose business will not permit them to keep a clerk. The rule was at first limited to merchants and shopmen, but now embraces all persons having continuous dealings with another, and who have no other way of proving their accounts. In South Carolina, however, the books of shopkeepers, mechanics and tradesmen, are only admitted.—2 *Bay*, 173 ; 2 *McCord*, 328 ; 4 *McCord*, 76.

The objections to books of original entries, are to their competency and their credibility. They are first to be submitted to the inspection of the court, and if found free from all fraudulent appearances or circumstances, such as material and gross alterations, false additions, &c., and appear to contain the first entries or charges by the party, made at or near the time of the transaction to be proved, they are competent. If the contrary is discoverable from the books themselves, or comes out upon the examination of the party, they ought to be rejected. The credibility, both of the books and of the party, is to be weighed by the jury, and depends upon various circumstances, of which they are the judges.—2 *Mass.* 221 ; 13 *Mass.* 427 ; 2 *Conn. R.* 633 ; 5 *Conn. R.* 443 ; 12 *Johns.* 461 ; *Greenleaf's Ev.* sec. 118–19 ; *Cowen & Hill's Notes* to 1 *Phil. Ev.* 266.

From the Roman law we have borrowed the "*juramentum suppletivum :*" the suppletory oath of the party. By the Roman law, the books, regularly and fairly kept, in the usual manner, were deemed *prima facie* evidence of the justice of the claim, and the oath of the party was then admitted to make up the "*plena probatio.*" So with us, when the books are found by the court to be regular and fair, by inspection, they lay the foundation for the suppletory oath. It is usual and necessary also, to require proof

from persons who have had dealings with the party, that he is in the habit of keeping correct accounts. And in some countries, as in Scotland, it is necessary to lay the foundation of all this testimony, by showing, by *aliunde* testimony, a course of dealing between the parties. Then the limitations of the rule are, that the books must appear to be the original entries of the party, made at, or nearly at the time, when the transaction to be proven occurred ; so near as to be part of the *res gestæ.* The time at which the entries must be made, appears to depend very much upon the circumstances of each case. They must be free from all circumstances and appearances which indicate a fraudulent intent. They must be supported by the suppletory oath of the party, and by proof *aliunde,* that he is in the habit of keeping correct accounts.—*See Greenleaf's Ev.* sec. 118–19, and *notes.*

Do the facts in this case bring it within the rule ? We think they do. There are no appearances on the face of the account, which make it incompetent. It is in the hand-writing of the party, and is a fair statement, in the usual manner of an account, with date, quantity, and price. The entries are proven to have been made at, or nearly at, the time that the lumber was delivered. The party kept no clerk, and these were the only entries made of the sale and delivery of the lumber. It was also proven that the plaintiff kept correct accounts.

It is objected, however, there was no book in this case of original entries proven, but only the plaintiff's bill of particulars. It is true, there was no book proven ; but it was proven that the identical paper containing the account, and attached to the writ as a bill of particulars, was the original paper and entries thereon of the party ; he kept no other.' It is not material whether the entries be made in a book or on a separate sheet. It is only material that they be an account of the dealing between the parties, and be primary and original.

It is also objected, that a part of the entries were made, as proven by the plaintiff, from memoranda furnished him by the sawyer who delivered the lumber. The sawyer was the agent of the plaintiff for delivering it, and no more. He kept no books, but reported to the plaintiff the transactions as they occurred ; and from these reports, according to the testimony, he made his entries. This fact constitutes no departure from the rule. The delivery of the lumber by the plaintiff's agent, his memoranda reported to him, and the plaintiff's entries, made at once from these memoranda, all make up the *res gestæ.* Entries transcribed from a slate have been admitted as original entries.—13 *Mass. Rep.* 428. The reason given is, that entries on a slate are mere memoranda, not designed to be permanent.

The 4th assignment of error is to the effect, that the account of original entries was improperly admitted, because it was not sufficiently proven that the plaintiff kept correct *books.* The evidence was, that the witnesses had dealings with the plaintiff; that they had settled with him upon presentation of their accounts ; and that they found those accounts correct. The exception is, that no *book of accounts* was proven to have been correctly kept by the plaintiff. If, as we have attempted to show, it is immaterial whether the original entries were kept in a book or on a separate sheet, then it is not necessary to prove that the plaintiff kept correct accounts *in a book.* The object of this testimony is to fortify the evi-

Taylor *vs.* Tucker.

dence of the plaintiff's original entries, by showing a habit of fair dealing, in like transactions, with others, on his part.    In our judgment, there was no error in the decision of the court below on this point.

Again : it is charged as error that the court instructed the jury that, if the lumber was delivered to the order of the defendant, and the bills were in writing, and they were afterwards countermanded, they were at liberty to make their own inference, as to whether they were countermanded in writing or verbally.

All the evidence relative to the countermanding the bills, found in the record, is the following, to wit : " The lumber was ordered by bills, which bills themselves were frequently countermanded, when it was found that the lumber did not suit." Whether countermanded in writing, or verbally, does not appear from the record.    It was certainly the duty of the court to submit this testimony to the jury, and they were properly instructed to infer from it whether the bills were countermanded in writing or verbally. It is the duty of the jury to weigh the testimony, and apply it to the case, equitably and reasonably.    It certainly is no part of the duty of the court to instruct the jury what construction they are to put upon the facts submitted to their consideration.    This would be to usurp the rights of the jury.    We cannot see how the defendant could be aggrieved by this charge of the court, as it seems to us to be rather in his favor then otherwise. There was no error in it.

The last assignment of error is founded on a request of the court to instruct the jury, as desired by the defendant, that the plaintiff could not recover more than the price of the lumber, as charged in the bill of particulars, and on the instruction of the court in fact given, to wit : " That if they believed the lumber was charged at the cash price, and the amount was presented with the expectation of its being paid when presented, and it was not paid, that they could find at the credit price, by adding it to the bill of particulars."    We find no evidence in the record about the cash and credit price of the lumber, except what appears on the plaintiff's account itself : that, as it stands, is evidence ; and it exhibits the price of each item, which we are left to infer is the cash price, referred to by the court.    Also, it exhibits one-fourth of the aggregate sum added in one item, and this aggregate sum, with the one-fourth added, we infer is the credit price, spoken of by the court.    Thus in the dark upon this point, we can only suppose that the court, in declining to charge as requested, and in charging as it did, intended to leave the jury free to consider of the account as it stood before them, and to find either the larger or less sum, as they might believe right.    That is, to find the aggregate amount of the bill of particulars, either with or without the one-fourth added.    Upon this view of the matter, we think the court did not err, and confirm the judgment below, upon all the points taken in the bill of exceptions.